IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Criminal Action Number 3:09CR086 |
| | ) | |
| ENRIQUE MERENTES-VARGAS, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION

This matter is before the Court on the defendant's motion to dismiss the indictment on the ground that it violates the applicable five-year statute of limitations period set forth in 18 U.S.C. § 3282(a).  The government has responded, and the defendant has filed a reply.  A hearing was held, and this matter is ripe.

I. FACTS

The defendant, a Mexican citizen indicted under the name "Enrique Merentes-Vargas," first illegally entered the United States without inspection at an unknown location on an unknown date sometime prior to August 23, 1985.  On August 23, 1985, he was convicted in California of the offense of selling marijuana.  He was convicted under his true name, Enrique Marentes Vargas.[1]  He was sentenced to 98 days in jail, followed by 36 months of probation. The state authorities did not notify federal immigration authorities of the arrest or conviction, so

---

[1]Defendant's Exhibit A is a copy of the defendant's birth certificate.  It verifies that his true name is ENRIQUE MARENTES VARGAS, born July 15, 1964 in Zacatecas, Mexico. However, since the defendant is indicted as "Enrique Merentes-Vargas," the Court refers to the defendant with that name.

the Immigration and Naturalization Service ("INS")[2] was never aware of the defendant's

presence in California.

        INS first encountered the defendant in 1998.  On April 20, 1998, the defendant was

arrested by immigration agents in Omaha, Nebraska.  The government claims that the defendant

was using the name Enrique Merentes-Vargas and the date of birth of  July 15, 1961, but there is

no documentation to support this claim.  The defendant's position is that he was using his correct

name and date of birth, as he had done in California, and that his name and date of birth were

listed incorrectly on the paperwork by the immigration agent.  The parties agree that this

incorrect identifying information –  Merentes-Vargas and July 15, 1961 –  was entered onto the

Record of Deportable/Inadmissible Alien form ("Record"), but it is not clear how the error

occurred.  <u>See</u> Defendant's Exhibit D.  Other identifying information was also entered onto the

Record in 1998, including the defendant's home state of Zacatecas, Mexico and the defendant's

claim that he had illegally entered the United States in January 1993 near El Paso, Texas.  In

addition, it listed his status at entry as "EWI," for "entry without inspection," which means that

he entered the United States without authorization.  It also lists his employer as R. L. Craft

Roofing in Omaha, Nebraska.  He was assigned Alien Number A76668165.  The parties also

agree that the defendant's fingerprints and a photograph were taken and put into an immigration

file.  INS records show that Enrique Merentes-Vargas was ordered removed from the United

States on May 13, 1998, and that he was removed from the United States to Mexico on May 14,

---

        [2] On March 1, 2003, INS service and benefit functions were transferred to the newly
created U.S. Citizenship and Immigration Services, while INS law enforcement functions were
transferred to the newly created U.S. Immigration and Customs Enforcement (ICE).  Both are
components of the Department of Homeland Security.

1998, after he was served with a form I-294 advising him of the penalties for reentry without the required advance permission of the Attorney General of the United States.  The form I-294, entitled "Warning to Alien Ordered Removed or Deported," includes the alien's full name, Alien Number, and the date of the removal order.

Thereafter, the defendant again illegally entered the United States on an unknown date at an unknown location.  In February 1999, the defendant obtained employment as a roofer with Carey Oakley & Co. in Sandston, Virginia.  In July 1999, the defendant was arrested in Henrico County, Virginia and was convicted of assault and battery.  He was sentenced to twelve months of incarceration.  After completing the sentence, the Virginia state authorities released the defendant without notifying federal immigration authorities of the arrest or conviction.

On November 30, 2001, Carey Oakley & Co. filed an I-140 Immigrant Petition for Alien Worker on behalf of the defendant using his true name and date of birth.  See Defendant's Exhibit B.  The name listed in part 3 on the first page of the Immigrant Petition is Enrique M. Vargas, as the form asks for "middle initial" rather than "middle name."  On the Department of Labor Application for Alien Employment Certification, the defendant's full true name is used: Enrique Marentes Vargas.  Both forms, the Immigrant Petition and the Application for Alien Employment Certification, which were submitted together to the INS, list the defendant's status as EWI and list his date of birth as July 15, 1964.  His birthplace is listed as Zacatecas, Mexico, and his prior employer is listed as R.L. Craft Co. of Omaha, Nebraska, for whom, it states, he worked from July 1995 until June 1998.  The defendant signed the form with his true name, "Enrique Marentes Vargas."   The government argues that the I-140 Petition did not disclose the prior criminal conviction for drug dealing or the prior removal, but there is no question on the I-

140 Petition or the Application for Alien Employment Certification regarding prior criminal convictions or prior removals.  However, the I-140 Petition does ask for an "A# if any"(Alien Number) and that was left blank even though the defendant was assigned an Alien Number that was included on his form I-294 when he was deported in 1998.  On October 25, 2002, the defendant's employer, Mr. Oakley, received a notice that the I-140 Petition had been approved.

According to the government, on August 3, 2007, the defendant filed an I-485 Application for Lawful Permanent Residency by mail from the Highland Springs area of Richmond.  See Government's Exhibit 1.  The government argues that multiple false statements, which constitute felonies under 18 U.S.C. Section 1546, were made to conceal his true identity and record.  For example, it argues that the defendant gave a false date of birth using 1964.  However, as his birth certificate shows, his correct date of birth was in fact 1964.  The government also argues that the defendant falsely claimed that he had arrived in the United States in 1979.  But, the government also states that no one is certain when the defendant first entered the United States, so it is unclear that this date is false.  In answer to the question whether the applicant has been previously assigned an Alien Number, the defendant answered "no."  The Application also asked whether he had ever been deported or removed from the U.S., and he responded "no."  Thus, the government argues, there was nothing in the Application to link him to his prior history.  This Application remains pending.

The defense argues that the I-485 Application is not relevant to the motion to dismiss before the Court.  Instead,  according to the defense, when the employer submitted the I-140 Petition in 2001, immigration authorities were put on notice that the defendant was in the United States, had entered without permission, and that his status was illegal.  This notice, the defense

-4-

argues, was sufficient for the defendant to be "found" in the United States, because his presence and illegal status were disclosed and, had immigration authorities exercised due diligence, they could have discovered this fact.

In February 2009, the defendant was arrested for robbery in Chesterfield County, Virginia.  The county authorities notified ICE of the defendant's arrest and, on February 9, 2009, ICE officials attempted to interview the defendant at the Chesterfield County jail.  The defendant did not provide ICE officials any information about his identity or status.  ICE officials obtained the defendant's fingerprints from the Chesterfield County authorities and forwarded them to the Federal Bureau of Investigation (FBI) fingerprint processing center.  This comparison linked the defendant to an FBI number and then to the 1998 immigration records.

On March 17, 2009, the grand jury returned a one-count indictment charging the defendant with being found in the United States after his illegal reentry after previously being deported subsequent to a conviction for a felony, in violation of 18 U.S.C. § 1326(a, b(1)).  He was arraigned on March 27, 2009.  He entered a not guilty plea, and the Court scheduled a jury trial.  On April 29, 2009, the defendant filed a motion to dismiss the indictment.

## II. ANALYSIS

A deported alien can violate 8 U.S.C. §1326[3] in three different ways: (1) entry, (2) attempted entry, or (3) being "found" at any time in the United States.  United States v.

---

[3]  8 U.S.C. § 1326 provides that:
    (a) ... any alien who—.
        (1) has been ... deported, or removed ... and thereafter
        (2) enters, ... or is at any time found in, the United States, ... be
fined under Title 18, or imprisoned ...
Enhanced penalties are provided in subsection (b) depending on the defendant's criminal record.

Hoenes-De La Cruz, 114 Fed. Appx. 524, 526, 2004 WL 2086025 *1 (4th Cir. 2004).  The five-year general statute of limitations in 18 U.S.C. § 3282 applies to this violation since the limitation applies to any non-capital offense.  See 18 U.S.C. § 3282.   The statute of limitations is an affirmative defense in which the defendant bears the burden.  United States v. Husband, 119 Fed. Appx. 475, 480 (4th Cir. 2005); United States v. Matzkin, 14 F.3d 1014, 1017-18 (4th Cir.1994); United States v. Williams, 684 F.2d 296, 299 (4th Cir.1982).

The defendant's position is that when his employer submitted the I-140 Petition in 2001, immigration authorities were put on notice that the defendant was in the United States, had entered without permission, and that his status was illegal.  This notice, the defense argues, was sufficient for the defendant to be "found" in the United States, because his presence and illegal status were disclosed and, had immigration authorities exercised due diligence, they could have discovered this fact.  Further, the defense argues that, with due diligence, immigration should have discovered that the person for whom the I-140 was filed was the same person deported by the INS in 1998, given that much of the information from 1998 was also submitted on the I-140 Petition.  Thus, the defense argues, the statute of limitations began to run when the I-140 Petition was filed in late 2001.  Therefore, the argument goes, since the present indictment was filed in 2009, it must be dismissed as barred by the five-year statute of limitations.

In the case of United States v. Uribe-Rios, 558 F.3d 347 (4th Cir. 2009), the Fourth Circuit considered the theory of constructive knowledge and various cases from the Eighth, Second, Fifth, and Tenth Circuits that support the proposition that "for an alien to be 'found,' the government must have 'knowledge of the illegality of his presence, through the exercise of diligence typical of law enforcement authorities.'"  Id. at 352 (internal citations omitted).  In one

of the cases considered, <u>United States v. Gomez</u>, 38 F.3d 1031 (8th Cir. 1994), the Eighth Circuit

held that "the statute of limitations for a 'found in' violation should . . . begin running when

immigration authorities could have, through the exercise of diligence typical of law enforcement

authorities, discovered the violation."  <u>Id.</u> at 1037.

The <u>Uribe-Rios</u> case shows clearly that the Fourth Circuit agrees with decisions by other

courts that "an alien is 'found in' the United States only when *federal*, not state, immigration

officials become aware of the alien's presence and illegal status."  558 F.3d at 353.  It favorably

notes a Second Circuit decision that "refused 'to adopt a rule that would make the INS

responsible for any immigration-related information discovered in *state* investigations of the

hundreds of thousands of prisoners in state custody at any given time.'"  <u>Id.</u> (citing <u>United States</u>

<u>v. Mercedes</u>, 287 F.3d 47, 55 (2d Cir. 2002)).  "[F]undamental principles of dual sovereignty do

not allow us to impute the knowledge of state officials to federal officials."  <u>Id.</u> at 356.  Other

circuits have also ruled that apprehension of an alien by local or state law enforcement does not

constitute being "found" under 8 U.S.C. § 1326.  <u>See</u> <u>United States v. Guzman-Bruno</u>, 27 F.3d

420, 422-23 (9th Cir. 1994); <u>see also</u> <u>United States v. Jimenez-Borja</u>, 378 F.3d 853, 857-58 (9th

Cir. 2004).  Therefore, the defendant cannot prevail on a theory that the knowledge of the

California or Virginia officials is imputed to federal officials.

The Fourth Circuit next considers the theory of constructive knowledge:

> First, we note that the plain text of section 1326 does not support a theory of
> constructive knowledge.  An alien violates 8 U.S.C. § 1326 when the alien "is at
> any time found in [] the United States" – not when the alien is "found or should
> have been found" in the country.

<u>Id.</u> at 354.  It notes that the Seventh Circuit "has already rejected a theory of constructive

knowledge under section 1326, finding that 'when the government should have discovered a

deportee's illegal presence in the United States is irrelevant to when the statute of limitations begins to run.'" Id. (citing United States v. Gordon, 513 F.3d 659, 664-65 (7th Cir. 2008).   It continues its favorable discussion of Gordon:

> The Gordon court reasoned that "to be 'found in' the United States . . . means to be 'present in' the United States without permission after deportation; the immigration agency's 'discovery' of the alien (whether actual *or* constructive) is not an element of the offense."  Because the alien "remains illegally 'present in' the United States," the Gordon court interpreted the "found in" violation of section 1326 to be a continuing offense, such that "[t]he limitations clock does not run during this period.  Because the 'found in' version of § 1326(a)(2) is a continuing offense, the date on which the immigration agency 'should have discovered' the alien is simply irrelevant."

Id. (internal citations omitted).  The Fourth Circuit concludes, "Like the Gordon court, we are reluctant to read a gloss onto section 1326 that the text of the statute does not itself support." Id.

Next, in the Uribe-Rios case, the Fourth Circuit held that "even if section 1326 does countenance a theory of constructive knowledge," it would not "employ a theory of constructive knowledge to find that federal immigration officials . . . failed to act with 'diligence typical of law enforcement authorities' when [an alien] concealed his identity with an alias." Id. at 354-55.  In the case of defendant Merentes-Vargas, the Court finds that there is no evidence that he has concealed his identity with an alias.  The evidence before the Court is that he has consistently used his true name.  It is most likely that the immigration agent misspelled the defendant's name when the agent completed the Record of Deportable/Inadmissible Alien form in 1998.  However, the defendant did fail to provide his Alien Number on the I-140 Petition when it was completed in 2001.  While this omission is different than the use of an alias, it was deceptive.

> [F]or statute of limitations purposes in § 1326 prosecutions, there can be no finding of lack of diligence where it is deception by the alien as to his identity that has caused the government not to have knowledge of his presence.  To hold

otherwise would be to reward deceit by the alien and to encourage the
withholding of information, and so the corruption of the deportation process.

Id. at 355 (quoting United States v. DeLeon, 444 F.3d 41, 52 (1st Cir. 2006)).  In Uribe-Rios, the

Fourth Circuit also notes a previous unpublished Fourth Circuit decision, United States v.

Almendarez, 1 Fed. Appx. 234 (4th Cir. 2001), which states:  "[O]ther courts have held that an

alien is 'found' when immigration authorities discover his presence in the United States,

determine that his presence is illegal, and ascertain that he has reentered after a previous

deportation." (citations omitted).  The defendant's failure to provide his Alien Number on the I-

140 Petition when it was completed in 2001, combined with the incorrect identifying information

entered onto the 1998 Record, prevented immigration authorities from discovering that the

defendant had reentered after a previous deportation.  Therefore, he was not "found" in late 2001

when the I-140 Petition was submitted to immigration.

The Court finds that ICE agents did not find the defendant until, at the earliest, February

9, 2009.  In fact, it was a number of days after that date before ICE discovered that not only was

the defendant present in the United States illegally, but also that he had reentered after a previous

deportation.  Therefore, the Court finds that the indictment was clearly within the five-year

limitations period.

Additionally, as stated in a previous decision, United States v. Ibarra-Reyes, 2007 WL

4287753 (E.D.Va. 2007), the Court finds that a violation of 8 U.S.C. § 1326 is a continuing

offense.  The purpose of a statute of limitations is to limit exposure to criminal prosecution

following an illegal act. United States v. Smith, 373 F.3d 561 (4th Cir. 2004); Toussie v. United

States, 397 U.S. 112, 114 (1970).  A statute of limitations protects individuals from having to

defend against charges "when the basic facts may have become obscured by the passage of

time," and it minimizes "the danger of official punishment because of acts in the far-distant

past." <u>Toussie</u>, 397 U.S. at 114-15.   Normally, the statute of limitations will begin to run when

a single criminal act is complete.  <u>Smith</u>, 373 F.3d at 563-64.  A criminal act committed over an

extended period, however, may be treated as a "continuing offense" for limitations purposes

when a criminal statute explicitly compels that result, or if "the nature of the crime involved is

such that Congress must assuredly have intended that it be treated as a continuing one."  <u>Smith</u>,

373 F.3d at 563-64.

  Where a deported alien enters the United States and remains here with the knowledge

that his entry is illegal, his remaining here until he is "found" is a continuing offense because it

is "an unlawful act set on foot by a single impulse and operated by an unintermittent force."

<u>United States v. Midstate Horticultural Co.</u>, 306 U.S. 161, 166 (1939).  The Fourth Circuit

followed this analysis in <u>United States v. Hoenes-De La Cruz</u>, 114 Fed. Appx. 524, 526, 2004

WL 2086025 *1 (4th Cir. 2004):

> An alien may violate 8 U.S.C. § 1326(a) by unlawfully (1) entering, (2) attempting to
> enter, or (3) being "found" in the United States.  <u>United States v. Mercedes</u>, 287 F.3d 47,
> 54 (2d Cir.), <u>cert. denied</u>, 537 U.S. 900, 123 S.Ct. 202, 154 L.Ed.2d 171 (2002);  <u>see also</u>
> <u>United States v. Mendez-Cruz</u>, 329 F.3d 885, 889 (D.C.Cir. 2003) (§ 1326(a) creates
> three distinct offenses) (citing <u>United States v. Pacheco-Medina</u>, 212 F.3d 1162, 1165
> (9th Cir. 2000)).   The statute of limitations begins to run when the offense is complete.
> <u>Mercedes</u>, 287 F.3d at 54.   Although the offense of illegal reentry may be complete
> when it occurs, when the entry is surreptitious, the "found in" offense "'is first committed
> at the time of the reentry and continues to the time when the defendant is arrested for the
> offense.'" <u>United States v. Ruiz-Gea</u>, 340 F.3d 1181, 1189 (10th Cir. 2003) (quoting
> <u>United States v. Lopez-Flores</u>, 275 F.3d 661, 663 (7th Cir. 2001)).

<u>Id.</u> at *1.  <u>See also</u> <u>Lopez-Vera v. United States</u>, 2006 WL 1285630 (M.D.N.C. 2006) (offense of

illegally re-entering the country is a continuing offense lasting from the time a defendant

re-enters until he is arrested for the offense).

  As 8 U.S.C. § 1326 is a continuing offense for statute of limitations purposes, the time

does not begin to run until the alien is "found" by ICE agents.  Therefore, in this case, the grand jury returned the indictment within the applicable five-year period.

### III. CONCLUSION

For the foregoing reasons, the Court will deny defendant's motion to dismiss the indictment.

An appropriate order shall issue.


June 5, 2009                                              /s/
DATE                                 RICHARD L. WILLIAMS
                                     SENIOR UNITED STATES DISTRICT JUDGE